**In the Matter of Richard D. SCHREIBER.**

No. 49S00–9008–DI–526.

Supreme Court of Indiana.

April 7, 1994.

Martin Risacher, Noblesville, for respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, for The Indiana Supreme Court Disciplinary Com'n.

### DISCIPLINARY ACTION

PER CURIAM.

The Disciplinary Commission charged the Respondent, Richard D. Schreiber, in a four-

count Amended Verified Complaint for Disciplinary Action with several violations of the *Rules of Professional Conduct for Attorneys at Law.* Respondent and the Commission have tendered for this Court's approval a "Statement of Circumstances and Conditional Agreement for Discipline," entered pursuant to Ind.Admission and Discipline Rule 23, Section 11(g). Respondent has tendered the requisite affidavit, as required by Admis.Disc.R. 23(17)(a). After careful examination, we find that the agreement should be approved.

Adopting the findings contained in the agreement, we now find that Respondent was admitted to the practice of law in this state on June 1, 1984, and is therefore subject to the disciplinary jurisdiction of this Court. Under Count I, James F. Ludlow, an associate of Respondent, settled a personal injury claim for $35,000.00 on behalf of Tammy Wieland, a minor, in June of 1989. Later that month, Ludlow filed a petition for appointment of a guardian for Tammy in Marion Superior Court, Probate Division. Wieland's father, Norman Wieland, was appointed guardian of the person of Tammy. Ludlow also filed, on behalf of Norman Wieland, a "Petition to Partially Compromise and Settle a Minor's Claim for Personal Injuries," in response to which the court approved an order, which included the following:

4. Authorizing and directing James F. Ludlow, to order and distribute checks from Schreiber & Sevenish's special trust account with Bank One—Indianapolis as follows:

(a) $1,000.00 to Norman Wieland.

(b) $22,262.88 payable to Bank One—Indianapolis, with the intention that these monies be deposited in a guardianship account on behalf of the minor, Tammy J. Wieland.

(c) $11,737.12 to Schreiber & Sevenish, Attorneys at Law.

5. Authorizing and directing the establishment of a guardianship account at the Bank One—Indianapolis, said account will, upon its terms, be revokable by the minor child, Tammy J. Wieland, upon her 18th birthday, provided, that until the 18th birthday of the minor, no funds will be distributed from the guardianship account without prior approval of the Court.

The settlement proceeds were deposited in Respondent's trust account in two installments: $25,000.00 in June, 1989, and $10,-000.00 in July, 1989. It was Respondent's obligation to ensure that the trust account was adequately supervised and funded, and to provide overall supervision of the maintenance and integrity of client funds within the firm's trust fund. Respondent provided authority to a support staff member to manage the trust account, but exercised inadequate supervision over that employee's actions. Additionally, he failed to provide adequate safeguards for the protection of client funds held by the firm. Between June or July, and December 1, 1989, transactions occurred in the trust account which depleted the funds required to satisfy client obligations. After Ludlow received notices from the probate division that a restricted account had not yet been established in regard to Tammy's guardianship funds and that contempt hearings had thus been scheduled, Respondent established a restricted account at Bank One, Indianapolis, on December 1, 1989. On December 27, 1989, a Bank One official notified Ludlow that there were insufficient funds in Respondent's trust account to make the required deposit into the guardianship account. Following instructions of the judge of the probate court, Ludlow deposited $18,794.09 (which represented all funds available in Respondent's trust account) into the Wieland guardianship account on December 27, 1989.

On January 4, 1990, Respondent deposited $3,468.79 into the Wieland account. The amount represented the remainder due Wieland's guardianship account less court-approved attorney's fees. The ending monthly balances of Respondent's trust account for the time period relevant to this matter are as follows:

| June, 1989: | $17,496.92 |
| July, 1989: | $ 10.95 |
| August, 1989: | $14,282.15 |
| September, 1989: | $ 7,661.20 |
| October, 1989: | $11,862.37 |
| November, 1989: | $ 9,267.48 |
| December, 1989: | $ 0.00 |

By his conduct aforesaid, Respondent violated Ind.Professional Conduct Rule 1.3 by

failing to act with reasonable diligence and promptness in representing a client; Prof. Cond.R. 1.15(a) by failing to keep a client's funds in a separate account; Prof.Cond.R. 3.4(c) by knowingly disobeying an obligation under the rules of a tribunal by failing to promptly establish a restricted account for guardianship funds; Prof.Cond.R. 8.4(a) by violating or attempting to violate the *Rules of Professional Conduct* through the acts of another; and Prof.Cond.R. 8.4(c) by engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation.

Under Count II, we find that Ludlow and Respondent received a settlement check for $100,000.00 on behalf of client Larry Warrick. Respondent deposited the check into his trust account. Larry owed $17,905.61 to medical providers. Respondent thus withheld that amount in his trust account for disbursement to the providers. However, by December 29, 1989, there were no funds in that trust account, and apparently the medical providers had yet to be paid. Respondent subsequently made full restitution of the $17,905.61. Respondent's conduct in Count II violated Prof.Cond.R. 1.3, 8.4(a), and 8.4(c).

Under Count III, we find that Ludlow received a settlement check on behalf of client Zina Willis for $3,500.00, which was deposited in Respondent's trust account. After payment of attorney's fees and distribution to Zina of her portion of the proceeds, $597.00 remained in the trust account, an amount earmarked to pay a medical creditor of Zina. Due to Respondent's general mismanagement and failure to properly supervise those employees to whom he gave authority to maintain the trust account, it did not contain sufficient funds to pay the medical creditor as of December 27, 1992. Respondent subsequently satisfied the obligation in full. Through conduct exhibited in Count III, Respondent violated Prof.Cond.R. 1.3, 8.4(a), and 8.4(c).

In Count IV, we find that on November 1, 1989, Tricia Ann Rickenbaugh, Jennifer L. Rickenbaugh, and Dee Neal employed Respondent to file a products liability lawsuit against Chrysler Motor Company following an automobile accident. Respondent filed the action on May 23, 1991, in Crawford Circuit Court, naming Jennifer and Dee as plaintiffs. By delaying the filing of the action until this date, Respondent missed the deadline imposed by the applicable statute of limitations, resulting in dismissal of the case on September 5, 1991. By his misconduct in Count IV, Respondent violated Prof.Cond.R. 1.3 by missing the filing deadline imposed by the statute of limitations.

In their agreement, the Respondent and the Commission concluded that an appropriate sanction for the misconduct at issue here is a suspension from the practice of law for a period of nine (9) months, at the conclusion of which Respondent may petition this Court for reinstatement.

Respondent's misconduct in each of the four counts is especially disturbing because of the harm it inflicted upon his clients. Where a lawyer's misconduct threatens clients' interests, this Court's responsibility to protect the public from unscrupulous or irresponsible lawyer conduct is brought to the fore. Here, we are convinced that, at least at the present time, Respondent represents a threat to his clients' interests and that he should accordingly be removed from the practice of law.

However, we also note compelling mitigating factors. Respondent has no prior disciplinary history. He has made full restitution to his clients for the misconduct found in Counts I, II, and III. He made full and free disclosure to the Commission, and has not been charged with additional disciplinary complaints since the time of the conduct at issue here. He has shown deep remorse for his actions and omissions. Further, it is evident that certain personal and professional difficulties may have contributed to the administrative failures and oversights which led to Respondent's misconduct. During 1988 and 1989, Respondent expanded his law practice from a sole venture to a firm with three associates, ten staff members, and three separate physical law offices. Because of personality conflicts among staff personnel, Respondent moved his own primary office to a satellite office, giving his office manager the authority to make personnel decisions in the main office. Respondent

also gave his bookkeeper the authority to sign his name to checks drawn on the trust and operating accounts of the firm. Attorney employee Ludlow was given authority to sign trust account checks.

Respondent's wife accepted a faculty position with the Miami (of Ohio) University in 1988. Thereafter, Respondent resided in Indianapolis during the week, commuting to Oxford, Ohio, on weekends to be with his family. In mid–1989, Respondent and his wife experienced marital difficulties. The attendant emotional dislocation deflected his attention from his law firm. He delegated more and more responsibility to attorney employees and staff members. Contributing to his isolation and dislocation from his firm were two complex and emotionally charged lawsuits on which Respondent was working at this time. Between May and December, 1989, Respondent was either managing, preparing, or trying these two cases exclusive to any other professional activity.

Respondent admits that the administrative integrity of his three-office network was inadequate. It is evident that his absence from the situs of the firm's main bookkeeping and administrative procedures in large part accounted for the misconduct arising in Counts I, II, and III. His failure to timely file a lawsuit in Count IV arose, in part, out of his mistaken impression that, under Indiana law, the statute of limitations was tolled for accidents involving minors, and not due to sheer negligent inaction. When Respondent learned of his error, he contacted his clients to inform them of a possible legal malpractice claim they might have for his failure to timely file.

Respondent completed a lengthy hospitalization for depression and stress immediately following the incidents in question. Since his release from the hospital in 1990, he has established a sole practice, does not ever intend to hire additional lawyers, and now pays special attention to his accounting and bookkeeping procedures.

Due to these extenuating factors, we are convinced that Respondent's misconduct is partly attributable to a situation that left him without the time, emotional and professional resources, and inclination to ensure that matters of his ultimate responsibility were adequately addressed. Respondent's remorse, coupled with the steps he has taken to rectify his errors, convince us that his fitness for law practice is potentially restorable, and that he should be afforded the opportunity to demonstrate to this Court such fitness at a later date. At the same time, we must presently exercise our obligation to protect the public, the Bar, and the profession from continued misconduct and omissions. We therefore approve the tendered agreement and, pursuant to that agreement, order that the Respondent, Richard D. Schreiber, be suspended from the practice of law for a period of not less than nine (9) months, beginning May 5, 1994. At the end of that period, Respondent may petition this Court for reinstatement, provided he meets the requirements of Admis.Disc.R. 23(4). Should Respondent be granted reinstatement, he will thereafter remain on probation for a period of two (2) years from the date of his reinstatement, and, as a condition of his continued practice, he shall, at his own expense, provide audit reports on his lawyer's trust account by a certified public accountant twice yearly to the Disciplinary Commission.

Costs of this proceeding are assessed against the Respondent.